UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEANNINE L. SOMBERG, et al.,

    Plaintiffs,

v.                                              Case No. 13-11810

UTICA COMMUNITY SCHOOLS,

    Defendant.
_____/

**OPINION AND ORDER AWARDING COMPENSATORY EDUCATION, DENYING PRETRIAL MOTIONS AS MOOT, DENYING DEFENDANT'S MOTION TO SUPPLEMENT THE RECORD AND CLOSING ARGUMENT, GRANTING PLAINTIFFS' UNOPPOSED MOTION TO ENTER EXHIBITS, AND SCHEDULING STATUS CONFERENCE**

This court previously granted Plaintiffs' motions for judgment seeking compensatory education but reserved its determination of the "quality and quantity" of such education pending the conclusion of a bench trial on that question. (Dkt. #30.) Both parties presented their proofs, and closing arguments were held on November 11, 2016. Several motions relating to the evidentiary hearing remain outstanding. Plaintiffs filed a Motion to Compel, (Dkt. #43), and a Motion in Limine, (Dkt. #49). Defendant filed a Motion to Compel Alternative Dispute Resolution, (Dkt. #37), a Motion for Continuance of Trial Date, (Dkt. #38), a Motion in Limine, (Dkt. #59), and a Motion Concerning Joint Proposed Findings of Fact and Conclusions of Law and Dates for Evidentiary Hearing, (Dkt. #67). Following closing arguments, Defendant also filed a Motion to Supplement Record and Closing Argument, (Dkt. #83), then Plaintiffs filed a Motion to Enter Exhibits, (Dkt. #87), which Defendant indicated it does not oppose, (Dkt.

#88). The court concludes that, to the extent that they were not already addressed at the evidentiary hearing, no additional hearing on the motions is necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will award compensatory education, grant the Motion to Enter Exhibits, and deny the other motions described above as moot.

## I. BACKGROUND

This court's previous order decisively resolved the question of liability in favor of Plaintiffs. It held that Utica Community Schools had failed to provide Dylan Somberg, then a mentally disabled teenager, with the requisite "free appropriate public education" ("FAPE") that he was owed under Section 1412(a)(1)(A) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The court concluded that it would not defer to the "forward looking" remedies afforded by the Administrative Law Judge, because they were "designed to curtail further damage, but [failed] to address the need to compensate Dylan for education he was not provided in the past." (Dkt. #30, Pg. ID 2231-32.) Specifically, it stated that Utica Community Schools "shall pay for compensatory education . . . in a manner and amount to be determined by further proceedings before this court." (Dkt. #30, Pg. ID 2235.)

A bench trial to resolve this question began on September 28, 2016 and the presentation of evidence concluded on October 3, 2016. The court then advised the parties of its general inclination as to a likely outcome but allowed the parties to reserve closing arguments and defer further hearings in the hopes that they may reach a settlement. (Dkt. #82, Pg. ID 3482-85.) No settlement was reached and the parties presented closing arguments on November 16, 2016.

Since then, Defendant filed a motion arguing for dismissal in light of a recent Michigan Department of Education complaint decision arguably supporting a theory, which Defendant advanced at trial, that Plaintiffs' removal of Dylan Somberg from Utica Community Schools rendered his claims moot. (Dkt. #83.) Plaintiffs also filed a motion requesting the entry of exhibits which the court had agreed to "provisionally receive" while Defense counsel reviewed them and determined whether it would be appropriate to lodge an objection. (Dkt. #87.) Defendant filed a letter indicating that it does not object, (Dkt. #88), and Plaintiffs filed a reply asking for clarification that the court grant admission of all three proposed exhibits in light of vague language in Defendant's letter, (Dkt. #89).

## II. STANDARD

In an IDEA action, the district court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c).

An award of compensatory education is an equitable remedy granted by the court as it finds appropriate. *Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007). An appropriate award of compensatory education is "relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Id.* (quoting *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994)). In general, compensatory awards "should aim to place disabled children in the same position they would have occupied but for the school district's violations of

IDEA." *Id.* at 317 (quoting *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)).

## III. DISCUSSION

### A. Mootness

Defendant argues that Plaintiffs rendered their case moot when they removed Dylan Somberg from Utica Community Schools and then ultimately completed his high school education, as it prevented the school from supplying any prospective remedy (*i.e.*, to modify the program designed for Dylan to provide a FAPE). During closing argument counsel cited a Sixth Circuit decision for the proposition that a case may become moot even after judgment on the merits, divesting the court of subject matter jurisdiction. (Dkt. #86, Pg. ID 3616.) The cited case, *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, involved a "continuing-education student with mild cognitive disabilities" who had been denied university housing on the basis that he was not a student in a degree-granting program. 639 F.3d 711, 713 (6th Cir. 2011). The student sued, winning an injunction requiring the school to provide housing. *Id.* Once the student had completed his university program and signaled no intention to return, the case became moot despite plaintiff's remaining request for money damages and attorneys' fees. *Id.* at 714.

It is true that a case may become moot even after an adjudication on the merits, but such is not the case here. The Supreme Court has held that "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277,

2287 (2012). (quotations omitted) "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (citing *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984)).

Dylan is not seeking temporary housing during the pendency of an education already behind him; he seeks compensatory education to put him in "the same position [he] would have occupied but for the school district's violations[.]" *Fayette Cty.*, 478 F.3d at 317. More analogous to the instant case was the plaintiff's position in *Barnett v. Memphis City Sch.*, where the Sixth Circuit held:

> The district court did not err in holding that plaintiffs' claim for compensatory education is not moot. Plaintiffs claim that the Memphis City Schools must pay for educational services because the school system illegally denied [him] a FAPE when he was under age twenty-one. Compensatory education is a judicially-constructed form of relief designed to remedy past educational failings for students who are no longer enrolled in public school due to their age or graduation. Plaintiffs in this case have asked the court to investigate past violations and to compensate for the denial of a FAPE with present educational services.

113 F. App'x 124, 126 (6th Cir. 2004).

Defendant invites the court to stretch the holding of *Fialka-Feldman* so as to render the very concept of compensatory education a nullity, applicable only in cases that have become moot, per Defendant's argument, by the mere passage of time. This argument, if accepted, carries with it a clear and perverse incentive to school districts such as Defendant that could be characterized as "wait them out." Instead, the court holds, consistent with the precedent of *Barnett*, that the case is not moot. The fact that Defendant, after closing argument, saw fit to submit additional materials related to a separate proceeding before the Michigan Department of Education does not alter this analysis.

5

## B. Compensatory Education

The question of the amount and nature of compensatory education that Defendant must supply to Dylan admits of no easy resolution. However, it is very clear to the court that the contentious relationship that has developed between the parties over the course of this case's long history make Defendant's direct participation in supplying any such education inappropriate. At the close of the presentation of evidence, for example, the court observed that Dylan's mother became "visibly upset" during her testimony that recounted Dylan's treatment by Defendant, her efforts to rectify what she viewed as shortcomings in this treatment, and Dylan's own statements reflecting his feelings about the prospect of additional education from Utica Community Schools. (Dkt. #82, Pg. ID 3480-81.) The fact that the District has sued Mrs. Somberg personally (though unsuccessfully) adds weight to the court's conclusion in this regard.

### 1. Expert Testimony

This court's conclusions are informed partly by the expert testimony of Dr. Derrick Fries, who described "transition planning" allowing students to move more smoothly from education towards normal employment. (Dkt. #80, Pg. ID 3072.) He suggested that Dylan attend a school where he appeared to be thriving, Farber Soul Center ("Farber"), and which would likely provide Dylan with resources that would be a valuable component of his transition plan. (*Id.*, Pg. ID 3070-72.) As alternatives, he suggested community colleges which allow students who do not have high school diplomas to take remedial courses leading to an Associate's degree as well as simply expanding efforts to obtain gainful employment for Dylan. (*Id.*, Pg. ID 3071, 3079-80.) By contrast, he opined that using Defendant's U-Connect program or indeed "anything

[Defendant] has to offer" would be "grossly inappropriate." (*Id.*, Pg. ID 3072.) Aside from transition services, he concluded that 4,550 hours of tutoring divided among math (10%), science (10%), reading (40%), and writing (40%), along with assistive technology should be implemented. (Id., Pg. ID 3078.)

      Dr. Fries also discussed cogently the degree of the deprivation Dylan suffered. He indicated that Dylan's consistently low scores on Woodcock-Johnson tests meant that he may have actually regressed over the course of his four years at Utica Community Schools. (*Id.*, Pg. ID 3049.) On cross-examination he further explained that, despite Dylan's low IQ, he would have expected greater improvement over that course of time if Dylan had been receiving proper instruction. (*Id.*, Pg. ID 3124.)

      Dr. Fries was not the only expert who testified. Dr. Laurie Lundblad conducted an independent educational evaluation of Dylan when he was 19 years old and concluded, using the Wechsler Adult Intelligence Scale, that he had an IQ of 75, which places him in the fifth percentile–"just about two standard deviations below average." (Dkt. #82, Pg. ID 3304.) She also administered tests as to Dylan's academic achievement, executive function, and attention skills, reaching similar conclusions. (*Id.*, Pg. ID 3306-3311.) She disagreed with Dr. Fries's estimation that Dylan should have progressed at a rate of 0.5 grade levels each year, because such an estimation would have to take account of a number of complex factors. (*Id.*, Pg. ID 3308-09). But it is not at all clear that Dr. Fries was limiting his estimation by merely considering Dylan's IQ and the time he spent at Utica Community Schools; Dr. Fries testified that he had considerable experience with developmentally disabled children, (Dkt. #80, Pg. ID 3085), and was personally acquainted with Dylan, (*Id.*, Pg. ID 3054-55).

Dr. Lundblad also testified that Dylan would benefit from the use of assistive technology, but her reasoning was not specific to Dylan. (Id., Pg. ID 3313-14.) However, it is not clear that this recommendation is at all tailored to the facts of the case. She went on to explain that "assistive technology is a great resource in general for people. We all use assistive technology." (Id. Pg. ID 3314.) Accordingly, her recommendation of assistive technology is helpful, but not dispositive. That is to say, the court is not convinced that assistive technology alone would be sufficient.

The court directed questions to Dr. Lundblad about the appropriate means of compensatory education, and she responded that it was possible that private tutoring could fill the gap in Dylan's education. (*Id.*, Pg. ID 3386.) When asked about the impact of the fact that deprivations occurred more than half a decade ago, she indicated that "[o]ne deviation, one degree off many, many miles down the road gets you way off track." (*Id.*, Pg. ID 3387.) However, she also indicated that she was never asked to actually determine or comment upon the existence of any institutional opportunities to supply an adequate compensatory education for Dylan. (*Id.*, Pg. ID 3388.)

### 2. Fact Witnesses

Testimony by Robert Monroe, the Assistant Superintendent for Teaching and Learning at Utica Community Schools, and Deborah Koepke, Executive Director of Special Services, though instructive as to the history of Defendant's interaction with the Sombergs was far less informative to the court as to the quantity and manner of compensatory education. Questioning focused on background facts of the underlying case already evident from the administrative record. As their testimony did not meaningfully address the degree of privation nor the best means of rectifying it, the

court will not discuss it at length here. There appears no need to render credibility findings with respect to these fact background witnesses. Mrs. Somberg's passionate testimony echoed that of Dr. Fries with respect to the likely avenues for compensatory education, and was generally factually credible, though certainly presented from a partisan's—*i.e*, a mother's— point of view.

### 3. Special Master

The court concludes that, although the amount of deprivation suffered by Dylan was serious, it does not amount to a complete four years of full-time tutoring as requested by Plaintiffs. Dylan did make some advancement over the course of his time in high school, even though he was not presented with what he was due under IDEA. Instead, the court views one year of tutoring as appropriate. Under the formula offered in Plaintiffs' trial brief this is approximately 1,200 hours of private tutoring. (*See* Dkt. #56-1.) The court also concludes that one year of transition planning would be appropriate, possibly, but not necessarily, at Farber Soul Center.

This is all to be paid for by Defendant, though the details of the implementation, such as the actual cost or the proper entities to provide these services are beyond the ken of this court. As such, the court will appoint a special master to address these questions and administer the ongoing payment of these expenses. Federal Rule of Civil Procedure 53 states that a court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(c). That standard is clearly met in this instance. However, "[b]efore appointing a master, the court must give the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53(b)(1). Thus, the

court orders the parties to meet and confer to try and reach an agreement on the appointment of a special master and then file a joint report by January 13, 2017. If no agreement is reached, then the parties are directed, to the extent that they have recommendations, to file them along with any supporting memoranda by the same date. The court shall then move quickly to appoint a special master and begin Dylan's compensatory education. Bearing in mind that some degree of cooperation between the parties will be necessary to obtain the best results, this court may order an assessment of Dylan's progress following this year of tutoring and transition services.  All fees, costs, and expenses associated with the special master will be borne by Defendant.

### C. Other Outstanding Motions

The other motions discussed above which remain outstanding are rendered moot by this decision and on that basis are denied to the extent that they request relief in conflict with that already provided by the court. The sole exception is Plaintiffs' seemingly unopposed motion requesting admission of exhibits, which the court grants. As an outstanding motion for attorney's fees remains on the docket, the court will hold a status conference to determine how best to resolve any outstanding questions. Such conference will be held on March 9, 2017 at the Federal Building and Courthouse, Port Huron, Michigan.

### V. CONCLUSION

IT IS ORDERED that Plaintiffs' Motion for Judgment (Dkt. # 22) is GRANTED as follows:

(1) Defendant shall pay for 1,200 hours of compensatory education

(2) Defendant shall pay for one year of transition planning.

(3) The parties shall meet and confer then file joint or separate recommendations with supporting briefs not to exceed three pages as their (joint or separate) recommendations for the appointment of a special master to oversee the administration of this relief.

IT IS FURTHER ORDERED that Plaintiffs' filed Motion to Compel, (Dkt. #43) and Motion in Limine, (Dkt. #49) are DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Alternative Dispute Resolution, (Dkt. #37), Motion for Continuance of Trial Date, (Dkt. #38), Motion in Limine, (Dkt. # 59), and Motion Concerning Joint Proposed Findings of Fact and Conclusions of Law and Dates for Evidentiary Hearing, (Dkt. #67), are DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Supplement Record and Closing Argument, (Dkt. #83), is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Enter Exhibits, (Dkt. #87) is GRANTED.

IT IS FURTHER ORDERED that a status conference shall be held on **March 9, 2017 at 3:30 p.m. in Port Huron, Michigan.**

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 20, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 20, 2017, by electronic and/or ordinary mail.

                                      s/Lisa Wagner
                                      Case Manager and Deputy Clerk
                                      (810) 984-2056