# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

JEANNINE L. SOMBERG et al.,

      Plaintiffs,

v.                                                   Case No. 13-11810

UTICA COMMUNITY SCHOOLS,

      Defendant.
_____/

## OPINION AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT, OVERRULING OBJECTIONS, AND IMPLEMENTING COMPENSATORY EDUCATION PLAN

On December 6, 2017, the court circulated to the parties a proposed compensatory education plan prepared by Special Master Cynthia Raymo. The court held a status conference on December 15, 2017, on the record, where counsel for both sides sought clarification from the Special Master regarding her proposed plan. Defendant Utica Community Schools timely submitted objections, combined with a motion for relief from judgment, on December 20, 2017. (Collectively, "Objections.") Plaintiffs have filed a response Defendant's Objections, and the court finds that no further hearing is necessary. *See* E.D. Mich. LR 7.1(f). For the reasons stated below, the court will overrule the objections and deny the motion for relief from judgment.

## I. BACKGROUND

Through previous orders, the court has held that Utica Community Schools (the "District") failed to provide Dylan Somberg, then a mentally disabled teenager, with the

1

requisite "free appropriate public education" ("FAPE") that he was owed under Section 1412(a)(1)(A) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The court concluded that it would not defer to the "forward looking" remedies afforded by the Administrative Law Judge, because they were "designed to curtail further damage, but [failed] to address the need to compensate Dylan for education he was not provided in the past." (Dkt. #30, Pg. ID 2231-32.) Specifically, it stated that Utica Community Schools "shall pay for compensatory education . . . in a manner and amount to be determined by further proceedings before this court." (Dkt. #30, Pg. ID 2235.)

A bench trial to resolve this question began on September 28, 2016 and the presentation of evidence concluded on October 3, 2016. On January 20, 2017, the court issued an order granting to Plaintiff "approximately 1,200 hours of private tutoring" and "one year of transition planning . . ., possibly, but not necessarily, at Farber Soul Center." (Dkt. #90, Pg. 3673.) The court further held that this compensatory education would be paid for by Defendant, though the details of the implementation would be determined through the use of a Special Master who could better determine the type of education needed under the evolving and particular needs of Plaintiff. The court stated that "[b]earing in mind that some degree of cooperation between the parties will be necessary to obtain the best results, this court may order an assessment of Dylan's progress following this year of tutoring and transition services." (Dkt. #90, Pg. 3674.)

In connection with this order, the court observed:

The question of the amount and nature of compensatory education that Defendant must supply to Dylan admits of no easy resolution. However, it is very clear to the court that the contentious relationship that has

2

developed between the parties over the course of this case's long history make Defendant's direct participation in supplying any such education inappropriate. At the close of the presentation of evidence, for example, the court observed that Dylan's mother became "visibly upset" during her testimony that recounted Dylan's treatment by Defendant, her efforts to rectify what she viewed as shortcomings in this treatment, and Dylan's own statements reflecting his feelings about the prospect of additional education from Utica Community Schools. (Dkt. #82, Pg. ID 3480-81.) The fact that the District has sued Mrs. Somberg personally (though unsuccessfully) adds weight to the court's conclusion in this regard.

(Dkt. #90, Pg. 3670.)[1]

Thereafter, the court appointed as Special Master Cynthia Raymo, who spent approximately three months assessing this case, visiting possible education facilities for Plaintiff, and preparing her recommendation for the court. After her considerable efforts and review of this case, she submitted her proposed compensatory education plan to the court ("the Plan"). The Plan provides for 362 hours of private tutoring in 2018, and one year of transition services, which will be implemented through the use of a Transition Navigator.[2] The Plan also provides for future adjustments, recognizing that its effectuation is a dynamic process, and some adjustments will be, if not inevitable, certainly likely. The Plan leaves open the question of the remaining 838 hours of court-ordered tutoring and, in the court's estimation, focuses primarily on the provision of

---

[1]The acrimonious relationship between the parties, and the continued efforts by the District unnecessarily to prolong this litigation has been noted several times in previous orders of the court. It suffices now to say that the District has defended this litigation more than tenaciously and has at times employed tactics–-suing the Parent and the Plaintiffs' attorney comes most readily to mind—that seem questionable at best. The District has sought to avoid the implementation of this court's orders past the point of reason.

[2]The proposed plan will be filed on the docket with this order and only the broad strokes are detailed above.

transition services to Plaintiff, in recognition of his current age, needs, and career aspirations.

Defendant has submitted objections to virtually every aspect of the Plan, including its very existence. Plaintiff does not appear to object to the Plan, but specifically reserves the right to seek compensation for the 838 unused hours of court-ordered tutoring.

## II. DISCUSSION

An award of compensatory education is an equitable remedy granted by the court as it finds appropriate. *Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007). An appropriate award of compensatory education is "relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Id.* (quoting *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994)). Given the timing of the Special Master's submission and the subsequent objections, the court has sought to resolve the remaining issues prior to the 2018 calendar year. As such, each objection will be addressed briefly–but decisively–below. Expeditious treatment is appropriate given that the objections are largely a regurgitation of previous arguments submitted by the District in seeking to avoid liability. It seems to the court that the objections are not precisely tailored to the implementation of the plan presented here, but more generally directed at the implementation of a plan at all. In any event, the court will overrule them and order the Special Master's Plan to be put in effect.

**A. Objection No. 1: "The Special Master confirmed the District's position that the Parent's unilateral decision to remove the Student from the District in October 2015 and place him in a private placement left the parties, this Court**

**and the Special Master unable to determine whether the Student experienced an educational loss arising from or relating to the September 2012 IEP."**

This objection is little more than an attempt to set aside the court's ruling as to the District's liability. Indeed, combined within this objection is a procedurally-improper "motion for relief from judgment" under Federal Rule of Civil Procedure 60(b). Any such motion is untimely. It is more easily understood as a motion for reconsideration. But, such motions for reconsideration under the local rules must be brought within 14 days of the order being challenged and must not "merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). Defendant's motion here is untimely and simply rehashes old arguments already ruled upon. Defendant has failed to "demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled" and also failed to show that "correcting the defect will result in a different disposition of the case." *Id.*

Defendant seeks to avoid the local rules by relying on Federal Rule 60, but here, too, it is misguided. Defendant submits that it relies on "newly discovered evidence" in the form of "testimony" of the Special Master which purportedly confirmed the opinion of Defendant's expert, presented at trial, that "it was impossible, in October 2016, to determine the effect of an IEP error or errors that had occurred in 2012 . . . because so much time had passed since 2012 and because the Parent refused to permit the District to evaluate the Student in 2016." (Dkt. # 131, Pg. ID 4349.) First, it is hard to conceive that "newly discovered evidence" can take the form of testimony which purportedly confirms prior testimony. There is nothing new in Defendant's theory. The court heard

5

it, considered it, rejected it. Second, there is no newly discovered "evidence." Defendant grounds the motion on the purported existence of "testimony" that was not testimony. It is no more than Defendant's imaginative (not to say misleading) interpretation of the Special Master's explanations–not given under oath–during an on the record status conference designed to provide clarity for the parties in serving the best interest of Dylan. Moreover, the court's recollection of the Special Master's explanation in this regard does not match that of Defendant's. The Special Master indeed stated that assessing Plaintiff and Plaintiff's progress was difficult, and would necessarily need to be fluid, or "dynamic," as implementing compensatory education is not an exact science. The court agrees. It does not alter the court's perspective that compensatory education is due and (belatedly) owing to Plaintiff. The objection to the award of any compensatory education at all, as well as the belated motion for reconsideration or relief from judgment, is without merit.

**B. Objection No. 2: The Special Master declined to place the Student in an IDEA-compliant program for compensatory education and transition services.**

Defendant objects that the Special Master did not opt to place Plaintiff in the STEP program, which would be free to the school, and instead opted for private, more expensive options. Defendant offers almost five pages of criticism of the Special Master's rejection of the STEP program, but the court is unpersuaded by any of them.

The Special Master in fact gave substantial consideration to the STEP program run by the Macomb ISD. While noting that the STEP program is "a worthwhile opportunity for many students to experience work sites, job placements and other

6

essential life skills" the Special Master ultimately concluded that it was not an appropriate program for Plaintiff. (Plan at Appx. I.) The Special Master acknowledged that it was uncertain that Plaintiff would be able to sustain a living solely on his art, but also emphasized that art was the best foreseeable option for an employment path. The Special Master rejected the STEP program due to the perceived level of anxiety attendance would create in Plaintiff, that the STEP program was not well-respected by the family, and that transferring to that program may exacerbate his health considerations. Contrary to Defendant's assertions, none of these reasons are inadequately supported, nor are they insignificant. Indeed, it is hardly surprising that the best option for Plaintiff would not be a program perceived as closely affiliated with Defendant, given the long history of contention between the parties. Morever, the STEP program appears to be aimed at students between the ages of 18 and 22-23, and Plaintiff is now effectively "aged out" of its primary focus. The court is not persuaded that the Special Master, or Plaintiff for that matter, was required to offer medical records or definitive medical proof that the STEP program would cause increased anxiety for Plaintiff. The conclusion Defendant attacks here is entirely logical given the particular history of this case and given Plaintiff's known conditions. The Special Master was tasked with finding the educational and transition options well-suited for Plaintiff, and the court is satisfied that Farber Soul Studio is a rational (and indeed, the predicted) choice for transition services.

The court dismisses Defendant's disingenuous argument that the Special Master somehow "overlooked" the STEP program. This argument is demonstrably not true.

The Special Master considered it, rejected it, and gave reasons for her rejection. The court agrees with those reasons and overrules Defendant's objection.

### C. Objection No. 3. The Special Master did not recommend 1,200 hours of tutoring and one year of transition planning.

Defendant objects that the proposed Plan is incomplete. The Plan has only accounted for 362 hours of tutoring and does not identify all of the transition services, instead recommending a Transition Navigator be hired to aid in the implementation of the court's award.

The court agrees that the current Plan is not complete. It does, however, account for the dynamic process that the court's order contemplated. At this point, the Special Master has recommended 362 hours of tutoring in 2018, and one year of transition services overseen by a Transition Navigator. It is possible that, given the age of Plaintiff and the length of time which this litigation has taken to conclude, additional hours of tutoring may not be necessary after 2018. It is also possible that the additional hours of tutoring will occur in 2019. This need not be---cannot be---decided at this point. While the court awarded approximately 1200 hours of tutoring services, the court did not mandate that they occur within one calendar year. Further, the court's previous orders contemplated a fluid process by which the compensatory education award would be satisfied. There is nothing improper about this first Plan being incomplete. Rather, the court finds it sensible to begin the initial implementation of the Plan subject to further revisions after a period of time, perhaps a few months, to allow the Master, the parties, and the court to learn how much, if any, progress is being made, and for the court to determine how the next stage should unfold.

Additionally, the court recognizes that Dylan has continued his education, at his own expense, during the pendency of this lawsuit. Plaintiffs have already indicated his intention to file a motion for reimbursement of compensatory education. It is possible that the court may find it appropriate to order that Plaintiffs be reimbursed for some of the costs for education, as offset and counted toward the 1200 hours of compensatory education awarded by the court. The Special Master's plan leaves open whether, in fulfillment of Defendant's responsibilities under the court's orders, Plaintiff may receive either (1) additional tutoring hours in 2019 or, if it is more appropriate, (2) reimbursement for the education Plaintiff purchased during the pendency of this litigation.

Finally, in this objection Defendant also takes issues with the use of a Transition Navigator, intimating that the Special Master is shifting her responsibilities onto a third party. The court disagrees, and views the use of a Transition Navigator, at roughly half the cost of the Special Master, as a likely cost savings to the Defendant and a reasonably economic suggestion. Defendant's third objection is overruled.

**D. Objection No. 4: The Special Master's recommendation is completely unrelated or contrary to the IDEA, the ALJ's Decision and Order, the evidence introduced at the administrative hearing and the evidence introduced at trial**.

In its fourth objection, Defendant asserts "[t]he District has argued, repeatedly, the Student is not entitled to compensatory education because there was no evidence tying the IEP errors identified by the ALJ to an educational loss suffered by the Student." (Dkt. # 131, Pg. ID 4355.) Defendant contends that the Special Master's proposal supports this argument because she stated that the Plan had been drafted with the "limited information available at this time." Defendant dissects this statement

and extrapolates it to mean that either the Special Master did not access all of the information at her disposal or she was "not able to create a relationship between this information and the 1,200 hours of tutoring and one year of transition services." (Dkt. # 131, Pg. ID 4356.)

Defendant has made this argument repeatedly. The court has rejected it repeatedly. The court now rejects it again.

Defendant's forced interpretation of an isolated statement is another example of its guileful insistence on utilizing the instant objections as a means to retry the merits of the case. The Special Master's plan is thorough, sensible, and tailored to the needs of Plaintiff. The Special Master had access to any materials she found necessary to make her recommendations, and also had access to the court if she needed help in obtaining any of those materials. The court finds her recommendations to be well-supported. They do not remotely provide grounds to reopen the merits determination of this four-year-old litigation.

The objection is overruled.

### E. Objection No. 5: There is no evidence establishing the Student lost access to instruction in art.

Setting aside that Defendant's objection appears to be based on a factually inaccurate premise,[3] Defendant has not made clear how this objection is relevant at this stage in the litigation. The court has found that Defendant failed to fulfill its responsibilities under IDEA, and that Plaintiff is due compensatory education as a result, including transition services. Both sides agree that transition planning under

---

[3]Plaintiff has presented sufficient evidence to rebut Defendant's assertion that Plaintiff was provided with ample artistic opportunities.

IDEA should be "based on the child's needs, taking into account the child's strengths, preferences, and interests . . . ." 34 C.F.R. § 300.43(a)(2). Plaintiff's interest and proclivities are based in art, so the fact that the Special Master's plan focused heavily on art should come as no surprise, and certainly not derided. The objection is overruled.

### F.  Objection No. 6: Some of the Special Master's recommendations are not consistent with this Court's Orders.

In its sixth objection, Defendant again challenges the use of a Transition Navigator. The court has already found such use reasonable. Defendant also contends it should not have to pay for Adobe Illustrator for Plaintiff. The court disagrees. This is an appropriate supplementation to the private tutoring, and an extremely small expense. As Plaintiffs points out, it is a logical remedy for shortfalls by Defendant in the past, including the failure to provide assistive technology. Defendant's sixth objection is overruled.

### G.  Objection No. 7: The Special Master's recommendation is wasteful.

Finally, Defendant objects to the cost associated with the Special Master's proposals. The court acknowledges the District's financial exposure, which is not insubstantial, but a large portion of the responsibility for that outcome lies at the feet of Defendant itself.

If only Defendant had fulfilled its educational responsibilities to Plaintiff in the first place; or, upon first recognizing its defalcation of those responsibilities if only Defendant had stepped up affirmatively and effectively; or, perhaps most poignantly, upon litigation ensuing in the absence of Defendant stepping up, if only Defendant had at least

avoided such an aggressive litigation posture to defend its failing position, and at some point in the past four years agreed to provide the required services . . . in any of these events, none of which came to pass, Defendant would not be facing the added costs now.

      To a certain extent, the court understands Defendant's frustration with the costs and burdens associated with the Special Master's proposed plan, which is admittedly more expensive than providing services at a public institution.  The court does not, however, find the plan to be irrational or flamboyant.  Instead, it is a well-reasoned proposal for providing, as best as can be done, a fair degree of the compensatory education due to Plaintiff.  It seems to the court that if Defendant been more focused upon its responsibilities under IDEA, many of these costs could have been avoided. [4] Unusual cost is a natural result of now trying to fashion a plan of compensation for this 24-year-old man in response to an injury which occurred years ago and which is not capable of being remedied either easily or with mathematical precision.  While the costs are high, the court does not view them to be wasteful.  They are both reasonable and long overdue.  Defendant's objection is overruled.

---

[4] Defendant also argues that there is "a fixed sum of money for educating disabled students.  To the extent the District spends over $65,000 on [Plaintiff], it will not spend over $65,000 on other, equally deserving disabled students."  (Dkt. #131, Pg. ID 4358.) The court is highly skeptical about the veracity of this statement, or indeed the legality of its implications. Defendant's argument invites the court to guess under which walnut shell is the pea, i.e., the fund the District uses to pay its litigation judgment obligations versus its attorney fees, versus its special education costs, and so on. The invitation is rejected. The court is quite dubious about the suggestion that one disabled student's education is fiscally offset by another's. It remains true that the District has certain legal responsibilities under IDEA.  The implicit argument presented here is that it need not fulfill its statutory duties under federal law simply because it must pay a litigation judgment. The court is unpersuaded.

### H. Plaintiff's request for sanctions.

In Plaintiffs' response, they ask for sanctions for what they characterize as Defendant's "flippant disregard for this Court's orders." (Dkt. #133, Pg. ID 4392.) While the court agrees that Defendant's objections are attempts to relitigate this matter, the court will not impose further sanctions on top of the attorney fee award already imposed. The attorney fee award is currently pending on appeal. After the Sixth Circuit rules on the appeal, the court will entertain a renewed motion for attorney fees for those fees incurred after the court's prior award.

### III. CONCLUSION

The court has considered Defendant's objections attempting to avoid implementation of this court's previous orders, and rejects each of them.

The Special Master's Plan is reasonable, well-supported, and consistent with the court's orders. The court will not brook further delay and will order its implementation forthwith. Accordingly,

IT IS ORDERED that Defendant's combined Motion for Relief from Final Judgment and Objections to Special Master's Proposed Compensatory Education Plan (Dkt. # 131) is DENIED.

IT IS FURTHER ORDERED that the Special Master's Plan, filed contemporaneously with this order is IMPLEMENTED. Defendant is DIRECTED to pay on a due-when-presented basis for all services identified by the Special Master supported by an invoice requiring payment. The court anticipates that invoices will be presented first to the Special Master and then by her to the District. Alternate payment mechanics may be agreed to by the Special Master in consultation with the District.

FURTHER, all parties are DIRECTED to cooperate with the Special Master, the Transition Navigator, and each other in effectuating its terms. Any dispute shall be brought to the court's attention immediately.

FURTHER, Defendant, through counsel, is DIRECTED to contact the Special Master within 24 hours of the entry of this order and coordinate payment for Farber Soul Studio's Winter 2018 term. If Plaintiff has already enrolled in this term and paid the registration fee, Defendant is DIRECTED to forthwith reimburse Plaintiff's payment for the registration.

By separate order, the court will order a status update from the Special Master in approximately three months.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 27, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 27, 2017, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6525